# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MELVIN MORGAN,
KATHLEEN BEGAY, on behalf of herself
and on behalf of her minor children,
KATRA PETERSON and ADRIAN
ZAVALA;
and MELVIN MORGAN, JR.

        Plaintiffs,

v.                                                                                    No. CIV 02-226 BB/DJS

BEN SHELLY, ERNEST C. BECENTI,
SR., AND HARRY MENDOZA, BOARD
OF COUNTY COMMISSIONERS OF THE
COUNTY OF MCKINLEY; THE
MCKINLEY COUNTY SHERIFF'S
OFFICE, A DEPARTMENT OF THE
COUNTY OF MCKINLEY; JOHN
TREVOR SMITH, A DEPUTY OF THE
COUNTY OF MCKINLEY AND AN
INDIVIDUAL; CORRECTIONAL
SERVICES CORPORATION; AND
UNKNOWN PERSONS 1 through 100,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        THIS MATTER comes before the Court for consideration of Defendants' second motion to dismiss (Doc. 12). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be DENIED to the extent that it requests dismissal of Plaintiffs' Fourth Amendment claims and GRANTED to the extent that it requests dismissal of Plaintiffs' Fourteenth Amendment claims.

# I.
# FACTS AND PROCEDURAL HISTORY

## A. Procedural History

In this action brought under 42 U.S.C. § 1983 and New Mexico state tort law, Plaintiffs allege, inter alia, that a sheriff's deputy violated their Fourth and Fourteenth Amendment rights during an investigatory stop. The complaint was originally filed in state court. Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441(b) and 1446(a), and have since filed three motions to dismiss and a motion for partial summary judgment. On September 3, 2002, the Court heard argument from the parties on each of these motions. At the hearing, Defendants' motion to dismiss for failure to file within the statute of limitations was denied. The Court took the remaining three motions under advisement. This opinion addresses Defendants' second motion to dismiss. The remaining motions will be addressed in separate opinions.

## B. Facts

On February 9, 1999, Defendant John Trevor-Smith, a deputy employed by the McKinley County Sheriff's Office ("MCSO"), pulled over a vehicle driven by Melvin Morgan. The other plaintiffs in this case - Kathleen Begay, Katra Peterson, Adrian Zavala, and Melvin Morgan, Jr. - were passengers in Morgan's car.

After coming to a stop, Morgan exited his vehicle. Plaintiffs allege that Deputy Trevor-Smith then released Robo, his police service dog, and ordered him to attack. Robo bit Morgan over twenty times on his throat, arms, legs, back, and scrotum. Deputy Trevor-Smith allegedly beat Morgan with his police baton while Robo attacked, and allowed the dog to continue biting Morgan after he was restrained in handcuffs. It is uncontested that, in addition to attacking

Morgan, Robo bit a New Mexico State Police Officer who arrived on the scene to assist Deputy Trevor-Smith.

In their complaint, Plaintiffs specifically allege (1) that Deputy Trevor-Smith trained Robo to attack, (2) that Robo was a vicious animal likely to bite people with whom he came into contact, and (3) that Deputy Trevor-Smith used excessive force when he unleashed Robo in their presence. They point to the Fourth and Fourteenth Amendments as bases for recovery for these claims. In their second motion to dismiss, Defendants argue that the Fourth and Fourteenth Amendment claims of Plaintiffs Begay, Peterson, Zavala, and Morgan, Jr. should be dismissed on the basis of qualified immunity.

## II.
## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and construes them in the light most favorable to the non-moving party. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court's function on a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief might be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). Accordingly, a 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." GFF Corp., 130 F.3d at 1384 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

3

# III.
# DISCUSSION

In their second motion to dismiss, Defendants raise qualified immunity as a defense to the claims of all Plaintiffs except Morgan. Their argument is grounded on the theory that the complaint only alleges facts sufficient to support a violation of Morgan's constitutional rights. Defendants argue that the other Plaintiffs' Fourth and Fourteenth Amendment claims are, therefore, based on their status as bystanders to the attack on Morgan, rendering them improper for § 1983 relief. In addition, they argue that even if Plaintiffs have alleged that their individual rights have been violated, the controlling caselaw was not sufficiently clear at the time of the alleged injury to put Defendants on notice that their conduct was unlawful.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier, 533 U.S. at 200-01. Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. Id.

Once a defendant asserts qualified immunity as a defense to a § 1983 claim, the plaintiffs bear the burden of satisfying a two-part test. Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001). First, they must establish that the defendant violated one of their constitutional or statutory rights. Id. Second, they must demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. Id. at 1156. If the plaintiffs fail to satisfy either part of the test, the court must grant the defendant qualified immunity. Id. If, however, the

4

plaintiffs successfully establish a violation of their clearly established rights, the litigation is allowed to go forward. Id.

**A.      Plaintiffs have alleged a violation of their constitutional rights.**

The first inquiry under the qualified immunity analysis is whether the plaintiffs have alleged a violation of their constitutional or statutory rights. Gross, 245 F.3d at 1155. Section 1983 is not itself a source of such rights, but "merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393 (1989). Here, Plaintiffs Begay, Zavala, Peterson, and Morgan, Jr. allege that Defendants violated both the Fourth and Fourteenth Amendments.

**1. Fourteenth Amendment**

In the past, courts often applied the Fourteenth Amendment to excessive force claims on the theory that "the application of undue force by law enforcement officers deprives a suspect of liberty without due process of law." See Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir. 1973). This analysis was, however, rejected by the Supreme Court in Graham, 490 U.S. at 394-95. There, the Court held that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." Id. Therefore, as discussed further below, the Fourth Amendment applies in this case. Consequently, Plaintiffs' Fourteenth Amendment claims must be dismissed.

### 2. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons...against unreasonable seizures." U.S. Const. amend. IV. Its proscriptions "safeguard the privacy and security of individuals against arbitrary invasions" by imposing a standard of objective reasonableness upon the exercise of discretion by government officials. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Graham, 490 U.S. at 396; Holland v. Harrington, 268 F.3d 1179, 1190 (10th Cir. 2001). The defendant's subjective intent is not a consideration. Graham, 490 U.S. at 397.

For the Fourth Amendment to apply in this case, Plaintiffs must have been seized. See California v. Hodari D., 499 U.S. 621 (1991). This is often a difficult issue, and Defendants cite a litany of cases where courts have struggled with it. In Delaware v. Prouse, however, the Supreme Court held that stopping a vehicle and detaining its occupants constitutes a seizure. 440 U.S. 648, 653-54 (1979). Since it is clear from their complaint that plaintiffs were all passengers in Morgan's car when Deputy Trevor-Smith pulled them over, for purposes of this motion they will be deemed to have been seized. The protections of the Fourth Amendment therefore apply, leaving before the Court the issue of whether the officials responsible for the seizure acted reasonably.

For a stop to be reasonable, it must be justified at its inception and "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995). The scope of a seizure is only reasonable if the seizing official's conduct is at all times based on facts sufficient to "warrant a man of

6

reasonable caution in the belief" that such conduct is appropriate. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). This is an extremely fact-specific inquiry, and the Supreme Court has cautioned against establishing bright-line rules to govern it. Ohio v. Robinette, 519 U.S. 33, 39 (1996). Such caution is particularly warranted in excessive force cases, where "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

While generally following the Supreme Court's lead and avoiding bright line rules in excessive force cases, the Tenth Circuit established that neither contact nor physical injury is required for force to qualify as excessive in Holland v. Harrington, 268 F.3d at 1195. That case involved § 1983 claims filed by children the police had held at gunpoint during a search. In upholding the district court's denial of summary judgment, the Tenth Circuit held that pointing a loaded firearm directly at a person after he submits to an officer's show of authority can qualify as excessive force. Id. at 1193. The court grounded its holding on the principle that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests -- a person's 'sense of security' and individual dignity." Id. at 1195.

According to Plaintiffs' complaint, when Deputy Trevor-Smith released Robo (1) Ms. Begay attempted to hide by curling up in the fetal position behind a bush; (2) Katra Peterson, age 15, and Adrian Zavala, age 9, similarly attempted to hide by climbing into the hole underneath an outhouse; and (3) Morgan, Jr. fled to a relative's house. From these allegations it can be inferred that Deputy Trevor-Smith's decision to release Robo directly affected each plaintiff in ways that

7

may have infringed on their "sense of security" and "individual dignity" in violation of the Fourth Amendment.

A police dog is clearly an instrumentality of force for which the police handler is responsible. Dye v. Wargo, 253 F.3d 296, 305 (7th Cir. 2001) (Wood, J., concurring in part and dissenting in part); Preister v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000); Vathekan v. Prince George's County, 154 F.3d 173, 179 (4th Cir. 1998); Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (characterizing a police dog as a "weapon"). Accordingly, Deputy Trevor-Smith will have to demonstrate that his decision to release Robo was reasonably justified in order to avoid liability in this case. In considering this issue, the Court will focus on whether Robo had the proper temperament and training to serve as a police service dog and factors related to the factual context in which Deputy Trevor-Smith's decision to release him was made. See Maria A. Audero, Note, From Man's Best Friend to Deadly Force: Vera Cruz v. City of Escondido, 29 Sw. U. L. Rev. 139, 157-62 (1999). If Robo was properly suited for use as a police service dog, the Court will analyze the decision to unleash him much like it would the decision to use a baton or stun gun against one person within a group. See Mason v. Hamilton County, 13 F. Supp.2d 829, 832 (S.D. Ind. 1998) (comparing the release of a police dog to the use of various other types of physical force). If, instead, Robo is shown to have been vicious and/or improperly trained, Deputy Trevor-Smith will have to show that he was justified in using force to seize Morgan that posed a danger to everyone present.

Either way, Deputy Trevor-Smith will have to rely on factors such as the severity of the crime at issue, whether Morgan posed a threat to the safety of the officers or others, and whether he was resisting arrest or attempting to evade arrest by flight to convince the Court that the force

8

used was warranted under the circumstances. See Graham, 490 U.S. at 396. Because both prongs of this analysis require consideration of facts not yet in the record, it is impossible to say that Plaintiffs could not recover for a violation of their individual rights at this time. Accordingly, the Court rejects Defendants' bystander liability argument and finds that Plaintiffs Begay, Zavala, Peterson, and Morgan, Jr. have properly alleged a violation of their individual Fourth Amendment rights.

**B.     The law upon which Plaintiffs' Fourth Amendment violations are based was clearly established at the time they were seized.**

Having found that Plaintiffs satisfy the first prong of the two-part qualified immunity inquiry, the Court must next address whether, at the time they were seized, the law was sufficiently clear to put a reasonable official on notice that his conduct violated their rights. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The goal of the clarity requirement is to strike the appropriate balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." Id. at 639. Generally, the law will not be treated as clearly established unless there is either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other jurisdictions supports the plaintiffs' interpretation of the law. Currier v. Doran, 242 F.3d 905, 922 (10th Cir. 2001). However, the exact behavior challenged by a plaintiff need not have been held unlawful for it to clearly violate the Constitution. Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1251 (10th Cir. 1999). Rather, officials are expected to reasonably apply the prevailing law to determine if a given action is lawful. Anderson, 483 U.S. at 640.

9

It has been clearly established since 1989 that Fourth Amendment excessive force claims are to be evaluated under a standard of objective reasonableness. Saucier, 533 U.S. at 201-02; Holland, 268 F.3d at 1195. Furthermore, the reasonableness standard has been held sufficiently clear to put the police on notice that physical contact is not required for force to be treated as excessive. Holland, 268 F.3d at 1195. Given the fact that the objective reasonableness standard had been applied for approximately ten years on the day Deputy Trevor-Smith pulled over Plaintiffs' car, the Court is hard-pressed to believe he was unaware that it was the standard governing his conduct while Plaintiffs were seized. In addition, the outer boundaries of the reasonableness standard were sufficiently well-established at the time of the arrest to make it clear that unleashing a vicious dog in the presence of children and unarmed adults could qualify as excessive force. See Preister, 208 F.3d at 927 (holding that the law clearly established by 1994 that release of a police service dog could amount to excessive force); Vathekan, 154 F.3d at 179 ("Fourth Circuit precedent existing in 1995 clearly established that failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context."); Watkins, 145 F.3d at 1093 (holding that it was clearly established that excessive duration of a dog bite and improper order to continue attack could constitute excessive force); Kopf v. Wing, 942 F.2d 265, 268 (4th Cir. 1991) ("We believe that a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum."); Marley v. City of Allentown, 774 F. Supp. 343, 345-46 (E.D. Pa. 1991) (holding that it was not objectively reasonable for a police officer to believe that unleashing a trained attack dog to apprehend a fleeing misdemeanant was constitutional), aff'd mem. 961 F.2d 1567 (3d Cir. 1992).

**C.      The constitutional violations alleged by Plaintiffs were not excusable as a reasonable mistake of law.**

Finally, the Court must consider whether Deputy Trevor-Smith's conduct was the result of a reasonable mistake of law. Although excessive force and qualified immunity are both analyzed in terms of reasonableness, the inquiries remain distinct. Saucier, 533 U.S. at 204. Under the doctrine of qualified immunity, if an officer makes a reasonable mistake as to what the law requires, he is entitled to immunity from suit even if his conduct is held unreasonable for purposes of the Fourth Amendment. Id. at 205. A mistake of law is considered reasonable if the circumstances "disclose substantial grounds for the officer to have concluded he had legitimate justification under the law for acting as he did." Id.; Holland, 268 F.3d at 1196. If Plaintiffs prove the allegations included in their complaint, this Court can find no grounds for a reasonable officer in Deputy Trevor-Smith's position to conclude there was a legitimate legal justification for his conduct.

**IV.
CONCLUSION**

For the reasons set forth above, the Court finds that Plaintiffs Begay, Zavala, Peterson, and Morgan, Jr. have sufficiently alleged a violation of their clearly established constitutional rights that was not based upon a reasonable mistake of law.

**ORDER**

**WHEREFORE,**

**IT IS ORDERED** that Defendants' second motion to dismiss (Doc. 12) be DENIED to the extent that it requests dismissal of Plaintiffs' Fourth Amendment claims and GRANTED to the extent that it requests dismissal of Plaintiffs' Fourteenth Amendment claims.

**DATED** at Albuquerque this 7th day of October, 2002.

                                                    _____
                                                  BRUCE D. BLACK
                                                  United States District Judge

**Attorneys:**

For Plaintiffs:
    William G. Stripp, Ramah, N.M.

For Defendants:
    Luis Robles, Albuquerque, N.M., Counsel for County Defendants
    Douglas J. Compton, Albuquerque, N.M., Counsel for Correctional Services Corporation